**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BLAIR DOUGLASS,<br><br>     Plaintiff,<br><br> v.<br><br>BLENDJET INC.,<br><br>     Defendant. | Lead Case No. 2:22-cv-00936-AJS |
| BLAIR DOUGLASS,<br><br>     Plaintiff,<br><br> v.<br><br>360SWEATER COMPANY, LLC,<br><br>     Defendant. | Member Case No. 2:22-cv-00967-AJS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
 📘 in 🐦 📷
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

III. STANDARD OF REVIEW ................................................................................................. 3

IV. ARGUMENT ....................................................................................................................... 3

 A. Douglass States A Claim On The Face Of The Complaint ................................... 3

 B. Title III Does Not Require Douglass To Engage In An Interactive Process .......... 7

V. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Access Now, Inc. v. Blue Apron, LLC*,
    2017 U.S. Dist. LEXIS 185112 (D.N.H. Nov. 8, 2017) ........................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 3

*Bethel v. Jendoco Constr. Corp.*,
    570 F.2d 1168 (3d Cir. 1978) .................................................................................................. 3

*Chaudhari v. Parker*,
    2022 U.S. App. LEXIS 21128 (3d Cir. Aug. 1, 2022) ............................................................ 3

*C.H. Robinson Worldwide, Inc. v. Lobrano*,
    695 F.3d 758 (8th Cir. 2012) ................................................................................................... 5

*Hoffman v. Nordic Nats., Inc.*,
    837 F.3d 272 (3d Cir. 2016) ................................................................................................ 3, 5

*Koester v. Young Men's Christian Ass'n of Greater St. Louis*,
    855 F.3d 908 (8th Cir. 2017) ................................................................................................ 8, 9

*Nardone v. United States*,
    308 U.S. 338 (1939) ................................................................................................................ 8

*Nat'l Fed'n of the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ..................................................................................... 6

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .................................................................................................... 3

*Pinker v. Roche Holdings, Ltd.*,
    292 F.3d 361 (3d Cir. 2002) .................................................................................................... 3

*Sipe v. Am. Casino & Entm't Props., LLC*,
    2016 U.S. Dist. LEXIS 53147 (W.D. Pa. Apr. 20, 2016) .................................................... 1, 2

*Tauscher v. Phx. Bd. of Realtors, Inc.*,
    931 F.3d 959 (9th Cir. 2019) ........................................................................................... 7, 8, 9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ................................................................................................. 2

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................. 3

Fed. R. Evid. 408 ................................................................................................................ 5

**Statutes and Regulations**

42 U.S.C. § 12102 ............................................................................................................... 4

Title I of the Americans with Disabilities Act, 42 U.S.C.S. §§ 12112-12116 ............................ 8, 9

Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ...................... *passim*

**I.      INTRODUCTION**

Plaintiff Blair Douglass ("Douglass") claims Defendant 360Sweater Company, LLC ("360Sweater") violated the effective communication and equal access requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, by failing to make its store compatible with screen reader auxiliary aids.

Instead of using its resources to ensure all consumers have full and equal access to its goods and services, 360Sweater seeks to avoid liability under Title III by asking the Court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). First, 360Sweater contends "[t]here is no dispute that the [store] is accessible using" one of the two auxiliary aids Douglass uses and, as a result, it does not matter that 360Sweater's store may be inaccessible with other auxiliary aids. Second, 360Sweater contends Douglass failed to engage in an interactive process before filing his complaint. Neither argument warrants dismissal.

360Sweater's first argument is an affirmative defense that improperly relies on contentions beyond the face of the complaint. For this reason alone, the Court should deny the motion because the facts alleged in the complaint, if proven at trial, entitle Douglass to relief. And even if the Court converted 360Sweater's motion to one for summary judgment, 360Sweater's claim is false; its online store is not accessible using *any* auxiliary aid. As to 360Sweater's second argument, Title III does not require plaintiffs to engage in a pre-suit interactive process, and even if it did, Douglass did so consistent with this Court's guidance in *Sipe v. Am. Casino & Entm't Props., LLC*, 2016 U.S. Dist. LEXIS 53147, at *11 (W.D. Pa. Apr. 20, 2016).

The Court should deny 360Sweater's motion to dismiss.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Douglass alleges he is blind and that, as a result of his blindness, he uses two auxiliary aids, including (a) JAWS 2022 and (b) VoiceOver, to access digital information. (Doc. 68-2, ¶ 21.) JAWS allows users to access digital content on a personal computer. (*Id*., ¶ 40.) VoiceOver allows users to access digital content on an Apple device, like an iPhone. (*Id.*, ¶¶ 41-42.)

Douglass alleges that 360Sweater is a sales establishment that delivers goods and services from its places of business in California and Colorado through the internet to its customers. (*Id*., ¶¶ 24, 25, 75.) Douglass alleges 360Sweater denies him full and equal access to these goods and services because 360Sweater's online store "contains communication barriers that prevent full and equal use by persons who are blind,[1] including Douglass, using screen access software." (*Id*., ¶ 78.) For example, Douglass alleges he cannot access the cookies policy, homepage, product pages, product ratings, and size guides on 360Sweater's store because the store is incompatible with VoiceOver. (*Id*., ¶¶ 46(a)-(e).) Douglass alleges these access barriers, and others, "deter Douglass from attempting to use the [store]." (*Id.*, ¶ 80.) Douglass alleges that notwithstanding the deterrence he's experienced, he "intends to attempt to access the [store] within the next six months." (*Id*., ¶ 81.) Douglass alleges the "discrimination is ongoing." (*Id*., ¶ 82.)

Consistent with public policy encouraging the resolution of "dispute[s] informally by means of a letter[,]" *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006), which "clearly[] [are] the most expedient and cost-effective means of resolving" website accessibility claims, *see Sipe*, 2016 U.S. Dist. LEXIS 53147, at *11, Douglass

---

[1] Douglass uses the word "blind" to describe individuals who, as a result of a visual impairment, have substantially limited eyesight. This includes individuals who have no vision at all as well as people who have low vision. *See* James H. Omvig, *Why Use the Word "Blind"?*, Braille Monitor (Jan. 2009), https://nfb.org//sites/default/files/images/nfb/publications/bm/bm09/bm0901/bm090107.htm (last accessed Aug. 18, 2022).

contacted 360Sweater about its inaccessible goods and services before commencing litigation. (*Id.*, ¶¶ 44, 45.) This was unsuccessful. (*Id.*, ¶ 45.) Because 360Sweater did not seek to resolve this case informally, Douglass filed his complaint on July 1, 2022. (Doc. 68-2.)

## III. STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under this Rule, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A motion to dismiss should be denied if a party alleges facts that entitle the party to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 653 n.8, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

"[C]ourts may grant a Rule 12(b)(6) motion on the basis of . . . an affirmative defense, only 'if the predicate establishing the defense is apparent from the face of the complaint.'" *Chaudhari v. Parker*, No. 21-1337, 2022 U.S. App. LEXIS 21128, at *4 (3d Cir. Aug. 1, 2022) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)); *see Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 (3d Cir. 2016). "If it is not, 'the district court must either deny the 12(b)(6) motion or convert it to a motion for summary judgment and provide both parties an opportunity to present relevant material.'" *Id.* (*quoting Hoffman*, 837 F.3d at 280 (citation omitted)).

## IV. ARGUMENT

### A. Douglass States A Claim On The Face Of The Complaint.

Title III's anti-discrimination mandate prohibits "public accommodations" from denying individuals with disabilities "full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations" provided by any public accommodation. 42 U.S.C. § 12182(a). "Disability" with respect to an individual means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities include . . . seeing." 42 U.S.C. § 12102(2)(A). "Public accommodation" is defined to include a "clothing store…or other sales…establishment." 42 U.S.C. § 12181(7)(E).

Based on the allegations of the complaint, 360Sweater has violated Title III's general anti-discrimination mandate. Douglass alleges that: (a) he "is and, at all times relevant hereto, has been legally blind," (Doc. 68-2, ¶ 21); (b) 360Sweater "sells cashmere clothing and accessories to consumers" (*Id*., ¶ 25); and (c) he cannot access 360Sweater's store because it "is incompatible with screen reader auxiliary aids." (*Id*., ¶ 38.) Accepting these allegations as true, Douglass is an individual with a disability, 360Sweater is a public accommodation, and 360Sweater has and will continue to deny Douglass full and equal enjoyment of its goods and services, in violation of Title III. Douglass states a valid claim.

360Sweater mischaracterizes Douglass's allegations as limited to a *single* type of auxiliary aid, (Doc. 68, p. 11), when, in reality, the complaint alleges that Douglass cannot fully and equally access 360Sweater's store with *any* auxiliary aids. For example, Douglass alleges that 360Sweater's "accessibility policies and practices have made it impossible to perceive, understand, or operate the platform's content with screen reader auxiliary aids." (68-2, ¶ 11.)[2] These allegations

---

[2] *See also* Doc 68-2, ¶ 38 (". . . Defendant fails to communicate this information effectively to individuals who are blind because the Digital Platform is not compatible with screen reader auxiliary aids."); ¶ 44 ("As a result of visiting the Digital Platform in February 2022, and from investigations performed on his behalf at that time, Douglass found that Defendant fails to communicate information about its products and services effectively because screen reader auxiliary aids cannot access important content on the Digital Platform."); ¶ 46 (" This subsequent investigation confirms Defendant still fails to communicate information about its products and services effectively because screen reader auxiliary aids cannot access important content on the Digital Platform.").

are not limited to a particular aid. The Court should reject 360Sweater's misreading of Douglass's complaint.

Because the complaint broadly alleges that 360Sweater's online store is inaccessible to auxiliary aids, generally, 360Sweater has attached emails to its motion, arguing that these emails prove 360Sweater's online store is accessible using at least one auxiliary aid: JAWS 2022. Aside from the fact that these emails cannot be considered at the motion to dismiss stage—because they are not public records or material embraced by Douglass's complaint, *Hoffman*, 837 F.3d at 280 n.52 (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012))— the emails themselves are inadmissible because they are "statement[s] made during compromise negotiations." Fed. R. Evid. 408(a)(2).[3] The Court should reject 360Sweater's weaponization of Douglass's good faith efforts to resolve his claim.

But even if the Court considered these improperly filed settlement discussions, the emails still do not prove that 360Sweater's online store is or will remain accessible with JAWS. For one, the emails concern just two examples of access barriers to 360Sweater's website on a particular date. (Doc. 68-3, p. 8.) As the emails explain, "the barriers [Douglass] identified are not all of the

---

[3] *See, e.g.*, Doc. 68-3, p. 14 ("Does your client intend to respond to our demand?"); *Id*., p. 13 ("The settlement demand you provided yesterday does not identify any other accessibility issues nor does it propose any changes to my client's website."); *Id.* ("Will you please let me know if you believe [another round of end-user testing] is necessary before your client considers a resolution consistent with our April 26th email?"); *Id*., p. 11 ("If Mr. Douglass does not wish to offer any further feedback we will assume that all issues raised in his request for accommodation have been resolved to his satisfaction."); *Id*., p. 11 ("Based on your prior correspondence, it seems your client is only interested in fixing barriers that Mr. Douglass identifies, and not a resolution of his claims by way of an agreement. Will you please let me know if I'm mistaken?"); *Id*., p. 7 ("Will you please let me know by the end of the week whether your client intends to respond to our April 26th demand?"); *Id*., p. 6 ("Section 2(b)(2)(A) of the form settlement agreement attached to your April 26 demand includes a provision that we 'eliminate the access barriers identified in paragraph NUMBER of the draft complaint.'"); *Id*., 4 ("Unfortunately, in light of your client's commitment to only 'troubleshoot the issues [Douglass] disclosed,' we have advised our client these pre-litigation efforts to resolve his claim have failed.")

5

barriers in the store. Reputable accessibility consultants may charge your client $20,000-$25,000 to do a top-down analysis of the store's accessibility. [Douglass has] not done that. Instead, [Douglass] attempted to point out some barriers on a rolling basis in an attempt to illustrate to [360Sweater] that this matter is about policies and practices and not a finite list of grievances." (*Id.*, p. 2.)

As to policies and practices, the emails fail to address what (if anything) 360Sweater has done to modify its operations to ensure that ongoing accessibility barriers are identified and remediated outside the threat of litigation. Individuals with disabilities should not be required to hire a lawyer and have that lawyer contact 360Sweater in order to gain full and equal access to 360Sweater's store. Rather, 360Sweater should institute policies and practices to prevent the development of access barriers and to preemptively identify and remediate them if and when they arise. But as the emails show, 360Sweater does not have any such policies and practices and instead relies on potential consumers to report the discrimination they encounter. Individuals with disabilities should not have to suffer dignitary harms for 360Sweater to ensure its store is and remains accessible. The emails attached to 360Sweater's motion do not absolve 360Sweater of liability; they prove it.

Finally, even if the face of the complaint showed that 360Sweater's store were accessible with JAWS, the Court should still deny the motion. Whether the provision of information through an alternative means results in "effective communication" (or, what 360Sweater misidentifies as a "reasonable accommodation," (Doc. 68, pp. 10-13)), "is an affirmative defense and not an appropriate basis upon which to dismiss [an] action." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006); *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-00116, 2017 U.S. Dist. LEXIS 185112, at *28 (D.N.H. Nov. 8, 2017) (citing *Target Corp.* for the same

proposition). Whether a store accessible with JAWS provides effective communication equal to a store accessible with VoiceOver is an affirmative defense for summary judgment or trial, and not appropriate for resolution on a motion to dismiss.[4] The Court should deny 360Sweater's motion for this additional reason.

> **B.** **Title III Does Not Require Douglass To Engage In An Interactive Process.**

The plain text of Title III of the ADA, unlike Title I, does not require individuals with disabilities to engage in an interactive process before filing suit. *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1194 (9th Cir. 2021) (citing *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 964-65 (9th Cir. 2019)) ("[W]hile the statutory language of the ADA makes the interactive process necessary in the employment context [under Title I], the statutory language does not require the interactive process in the context of public accommodations and services [under Title III], and therefore it is not applicable in that context."); *Tauscher*, 931 F.3d at 964 ("Title III and its implementing regulations make no mention of an 'interactive process' . . ., [n]or is there any basis for holding that a public accommodation is relieved of its obligation to provide appropriate auxiliary aids and services if the individual requesting such measures fails to engage in a good faith exploration of what measures would provide effective communication.").

---

[4] Although this is not the proper stage to decide whether a store accessible with JAWS provides the same access as a store accessible with VoiceOver, a store accessible with JAWS, *only*, does not provide full and equal access. JAWS is a Windows application that functions with personal computers, while VoiceOver makes a store accessible on any Apple device, including an iPhone. (Doc 68-2, ¶¶ 40-41.) This means that an online store accessible only through JAWS would require blind consumers to have access to a personal computer and prevent such consumers from accessing the store from anywhere other than where their personal computer is physically located. This would deprive blind consumers of the privileges and advantages of shopping in the store at any time and place with their mobile device—privileges and advantages that 360Sweater makes available to consumers who are not blind. This unequal treatment violates Title III.

This makes sense. Title I applies to parties with an ongoing relationship where the interactive process compels a bilateral burden on both sides to interact and make adjustments and decisions for a reasonable accommodation to work in maintaining the employment relationship. Meanwhile, Title III applies to public accommodations providing a large host of services, often in one-time or even emergency situations to members of the general public with whom they may have little other interactions. Adopting the formal interactive process from Title I is not only unsupported by the terms of Title III, its implementing regulations, and governing law, the prerequisite would overlay a process that could lead to delay and obstruction against immediate needs of blind consumers, gutting the guarantees and protections of the ADA. *See Nardone v. United States*, 308 U.S. 338, 341 (1939) (refusing to impute construction to a statute that would create "a self-defeating, if not disingenuous purpose").

360Sweater ignores the plain text of the ADA, as well as on point cases like *Howard* and *Tauscher*, and cites *Koester v. Young Men's Christian Ass'n of Greater St. Louis*, 855 F.3d 908, 913 (8th Cir. 2017), to argue that a plaintiff's Title III claim must be dismissed if the plaintiff fails to engage in an interactive process before filing suit. But *Koester* undermines 360Sweater's argument. *Koester* did not decide that Title III required a plaintiff to engage in an interactive process. The court assumed an interactive process was required and considered the plaintiff's claim that the defendant violated Title III by failing to engage in it. *Koester*, 855 F.3d at 912-13. The court, however, made that assumption "with a hefty dose of skepticism that these concepts are applicable in this Title III case[,]" and resolved the appeal on other grounds. *Id.* at 912. Had the court analyzed the language of Title III, which "make[s] no mention of an 'interactive' process,'" and which provides no "basis for holding that a public accommodation is relieved of its obligation to provide appropriate auxiliary aids and services if the individual requesting such measures fails

8

to engage in a good faith exploration of what measures would provide effective communication," *Tauscher*, 931 F.3d at 964, the court would have confirmed its "hefty dose of skepticism," *Koester*, 855 F.3d at 912, followed cases like *Howard* and *Tauscher*, and held that the "interactive process" requirement of Title I of the ADA "is not applicable in [the] context [of Title III]." *Howard*, 988 F.3d at 1194.

For sake of argument, even if an "interactive process" obligation existed under Title III of the ADA, Douglass discharged that obligation. He contacted 360Sweater after attempting to access its online store in February 2022. (Doc. 1, ¶¶ 44, 45.) Then, until June 23, 2022, Douglass attempted to resolve his claim through counsel. (Doc. 68-3.) Douglass provided 360Sweater with a draft, unfiled complaint describing some access barriers to its online store, (*id*., p. 5); reviewed and described the insufficiency of 360Sweater's accessibility testing, (*id*., p. 14); provided additional examples of accessibility barriers, (*id*., p. 8-9); explained why 360Sweater's consultant was not credible and encouraged 360Sweater to get a second opinion, (*id*., p. 7); and explained, multiple times, that Douglass's claim concerned 360Sweater's insufficient policies and practices, not individual access barriers that 360Sweater might prefer to fix one at a time, after being notified by Douglass, "in an endless game of whack-a-mole." (*Id*., pp. 2, 12.)

To this end, in his counsel's final communication before Douglass filed suit, undersigned explained:

> We just view these claims very differently.
>
> As I've attempted to explain, we view this matter as being about policies and practices, the insufficiency of which creates access barriers that prevent and deter our client from shopping in 360Sweater's online store. Your client has elected to ignore our April 26th request for policy and practice changes, opting instead to "troubleshoot the issues [we] have disclosed." This is not a sufficient policy and practice because it does not remediate all of the access barriers on the site nor does it reduce the likelihood that additional barriers will arise in the future as your client adds or modifies its online content.

9

> I believe your perspective, as far as I understand it, might be better suited in a physical architectural barrier case. Say, for example, Mr. Douglass had a mobility disability that caused him to use a wheelchair, and 360Sweater sold its product from a brick-and-mortar store that was only accessible via stairs. If 360Sweater added a ramp up its front steps, then Mr. Douglass's claim, arguably, might be resolved because the ramp, once constructed, (a) gives Mr. Douglass access and (b) is unlikely to change. In other words, Mr. Douglass's discrete claim of not being able to get in the front door would have been resolved and would be unlikely to recur.
>
> That's not the case here. First, the barriers we have identified are not all of the barriers in the store. Reputable accessibility consultants may charge your client $20,000-$25,000 to do a top-down analysis of the store's accessibility. I have not done that. Instead, I have attempted to point out some barriers on a rolling basis in an attempt to illustrate to you that this matter is about policies and practices and not a finite list of grievances. Second, we have no reason to believe that more barriers will not arise the next time your client has a Fourth of July sale or adds new products to the store. Unlike the scenario above, this is not a one-time fix (i.e. a ramp) required to remedy one access barrier (i.e. stairs).

(*Id.*, p. 2.)

For months, Douglass, through counsel, thoughtfully explained the facts giving rise to his claim, the legal theories underlying it, and the relief he sought. For months, 360Sweater ignored that information, insisting its obligations only covered the access barriers Douglass identified. At no point did 360Sweater respond to Douglass's demand, nor offer any indication it intended to respond to his request for policy and practice changes. (*Id.*, pp. 7, 13, 14.) To the extend the Court holds that Title III mandates a pre-filing "interactive process" requirement, Douglass satisfied that obligation. Accordingly, the Court should deny 360Sweater's motion.

**V.     CONCLUSION**

The face of Douglass's complaint states a claim under Title III of the ADA. 360Sweater—a public accommodation—denied Douglass—an individual with a disability—full and equal enjoyment of 360Sweater's good and services because 360Sweater's online store is not compatible with screen reader auxiliary aids, in violation of the ADA's general anti-discrimination mandate and effective communication and equal access requirements. The Court should not consider the

10

evidence accompanying 360Sweater's motion to dismiss. But even if the Court does, this evidence confirms 360Sweater's online store is inaccessible and its policies and practices are insufficient. Finally, Title III does not include an interactive process requirement, like Title I, and if it did, Douglass exhausted that process over the course of five months. Consequently, Douglass respectfully requests that the Court deny 360Sweater's motion to dismiss.

| | |
|---|---|
| Dated: August 18, 2022 | */s/ Kevin W. Tucker* |
| | Kevin W. Tucker (He/Him) (PA 312144) |
| | Kevin J. Abramowicz (He/Him) (PA 320659) |
| | Chandler Steiger (She/Her) (PA 328891) |
| | Stephanie Moore (She/Her) (PA 329447) |
| | **EAST END TRIAL GROUP LLC** |
| | 6901 Lynn Way, Suite 215 |
| | Pittsburgh, PA 15208 |
| | Tel. (412) 877-5220 |
| | Fax. (412) 626-7101 |
| | ktucker@eastendtrialgroup.com |
| | kabramowicz@eastendtrialgroup.com |
| | csteiger@eastendtrialgroup.com |
| | smoore@eastendtrialgroup.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, August 18, a true and correct copy of the foregoing document was filed on the Court's CM/ECF system and will be served upon all counsel of record.

Respectfully Submitted,

Dated: August 18, 2022         */s/ Kevin Tucker*
                               Kevin W. Tucker (He/Him)

12